## Franklin Township School District v. Sharrah

*John A. MacPhail*, for plaintiff.

*Donald G. Oyler*, for defendant.

SHEELY, P. J., March 17, 1956.—This matter is before the court on the school district's demurrer to defendant's affidavit of defense to a scire facias sur tax lien issued by the school district. The demurrer admits, at least for the purpose of this proceeding, the facts alleged in the affidavit of defense but questions the sufficiency of the defense. According to the affidavit of defense the facts are as follows:

Defendant purchased a tract of land in Franklin Township in 1952 for a consideration of $1,400 and later sold one-half of the lot for $700. The remaining one-half was assessed for tax purposes in 1953 by the local assessor for $175, being 25 percent of the actual value of $700. Because of a clerical error in the chief assessor's office, the purchase price was entered on the assessment roll as $14,000, instead of $1,400, and the assessed value of defendant's remaining one-half of the tract was fixed at $2,125. This erroneous assessment

was contained in the duplicates delivered by the chief assessor to the taxing districts for the year 1953.

No notice of the erroneous assessment was given to defendant and he did not learn of it until he received his tax notices during 1953 for that year's taxes. He refused to pay the taxes and liens were entered by the school district and the road supervisors. Defendant then went to the chief assessor where the error was discovered and the chief assessor corrected the assessment on his 1954 tax duplicate by striking a line through the figure $2,125 and writing above it the figure of $175, and wrote a letter dated June 28, 1954, to the tax collector stating:

"Through an error, Mr. Wilmer Sharrah was prematurely assessed for his house which was not completed until 1954. You are hereby authorized to reduce his assessment of $2,125 to $175 and to request exoneration in the amount of $1,950."

On the same date defendant attended a meeting of the Franklin Township School Board at which it was agreed that the tax lien should be satisfied upon payment of the tax on $175, which was done.

The error had already been carried into the assessment rolls for 1954 and the tax duplicates for that year containing the error had theretofore been delivered by the chief assessor to the taxing districts. The corrected figure was accepted and followed by the tax collector and by all taxing authorities except the school board. The 1954 tax notices for county and road taxes, mailed on June 28, 1954, showed an assessment of $175 and a tax based on that figure. The school board, however, refused to accept the correction for 1954 and defendant's school tax notice, mailed in August 1954, continued to show the assessment of $2,125 and demanded a tax based on that figure. Upon failure of defendant to pay the tax the school board caused the present tax lien to be filed.

In the meantime defendant had, during 1953, begun construction of a house on the premises into which he and his family moved on December 27, 1953, although it was not completed until some time in March 1954. In May 1954, the local assessor valued the property at $4,500 and assessed it at $1,125, which assessment was approved by the chief assessor.

The school district contends that the court of common pleas has no jurisdiction to entertain an appeal from an assessment unless the assessment was first appealed to the board of revision of taxes: Susquehanna Collieries Company's Appeal, 335 Pa. 337 (1939). With this proposition we agree, but the present proceeding is not an appeal from an assessment. It involves an effort by the school board to collect taxes which the taxpayer says were not levied on the basis of an assessment actually made, but on the basis of a clerical error in the chief assessor's office. The correct valuation of defendant's land is not in question and cannot be raised in this proceeding; the sole question is what assessment was actually made on defendant's land.

Before the school board can recover in the present action it must be prepared to show that taxes were levied on the basis of the assessed value of the property. What was the assessed value? There had been only two assessments made, one in 1953 for $175 and one in 1954, after the completion of the building on the land, for $1,125. At no time was the property actually assessed at $2,125. After the 1953 assessment by the local assessor the amount thereof was apparently revised to $2,125 by the board for assessment and revision of taxes on the basis of the clerical error in its own records. This error was corrected by it and the correct assessment of $175 was noted on the assessment rolls. The board had the right to make this correction: Marcus Hook Borough School District v.

Board, etc., 359 Pa. 60 (1948). The assessment thus made continued until there was a new assessment which was not made until May 1954, after the tax duplicates for that year had been delivered to the taxing authorities which was required to be done before the first day of April: The General County Assessment Law of May 22, 1933, P. L. 853, sec. 515, 72 PS §5020. Thus, the correct assessment for taxes levied by the school board in the year 1954 was $175. It is further noted that the taxpayer could not appeal from the erroneous figure as he was given no notice that the assessment would not be the same as for the preceding year: The General County Assessment Law of May 22, 1933, P. L. 853, secs. 503 and 510, 72 PS §5020.

The school district next contends that the court cannot compel the district to grant an exoneration of the taxes since this is a matter within the discretion of the taxing authorities: Clinton School District's Appeal, 56 Pa. 315 (1867). We agree with this proposition, but it does not apply here. The matter of exonerations has to do with the settlements of the tax collector with the taxing authorities, and the exoneration of the tax collector from the responsibility of collecting certain taxes does not relieve the taxpayer. The Local Tax Collection Law of May 25, 1945, P. L. 1050, 72 PS §5511.37, specifically provides that when a tax collector has been exonerated from the collection of any tax ". . . such action shall not in any way have the effect of discharging or limiting the liability of the taxable. . . .". The question of exoneration of the tax collector is not here involved and could not be since the school district has filed a tax lien which, in itself, relieves the tax collector.

The school district relies strongly upon School Directors of Bedford Borough v. Anderson, 45 Pa. 388 (1863), and, at first glance, that case would seem to

rule the present situation. In that case Anderson secured a writ of mandamus to compel the school district to relieve him from the payment of taxes assessed against him upon moneys at interest represented by a mortgage. He contended that the taxes were unjust and oppressive for several reasons, one of which was that no interest had been paid on the mortgage for more than a year. The Supreme Court held that, whatever rights he might have, mandamus would not lie because exoneration was a discretionary matter and the courts could not compel the board to exercise its discretion in a particular manner. In that case there was an actual assessment of the mortgage and the taxes were levied on the basis of that assessment. In the present case defendant is not asking to be relieved from the payment of taxes based upon an actual assessment. It is his contention that his property is assessed at $175 and that the figure of $2,125 upon which his taxes were levied was due to a clerical error made in 1953 and then corrected by the board of revision. Although the duplicates delivered to the taxing authorities showed the larger amount, they were delivered before the correction was made and the records in the office of the chief assessor would show the lesser amount as the correct assessment.

Finally, the school district contends that it did not act capriciously or arbitrarily with respect to the 1954 taxes since the taxpayer had constructed a house on the property and had moved into the house on December 27, 1953. While the erection of the house on the property justified a reassessment of the property, the reassessment was not made until May 1954, which was too late to fix the liability for taxes for that year. Furthermore, the reassessment based on the erection of the house was $1,125, and not $2,125 on which it is sought to collect the present tax. As pointed out above, the assessment as made and revised in 1953

continued until there was a new assessment and the taxpayer may, in this action, contest the collection of a tax based not upon an assessment but upon a clerical error.

And now, March 17, 1956, the demurrer to the affidavit of defense is overruled and the school district is directed to file a reply to the affidavit of defense within 20 days if it so desires.